UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  2:06-CR-85 PS |
| v. | ) | |
| | ) | |
| ARTHUR J. SIMS and | ) | |
| DOROTHY F. DAVIS | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Defendant Dorothy F. Davis moves to suppress evidence that was seized during a search of her clothing.  [DE 26.]  Because the search was proper as it was incident to her lawful arrest, the motion to suppress the evidence is denied.  Davis also moves to exclude statements made to police officers after her arrest because she was unable to read the waiver form and she was threatened into making certain incriminating statements.  Davis has presented no evidence to support her claim.  That motion therefore also is denied.

**I.  BACKGROUND**

A confidential informant (CI) used by the Gary Police Department made three controlled purchases of heroin from co-defendant Arthus Sims at his residence in Gary, Indiana in March of 2006.  Based on these heroin purchases, Gary police officers obtained a search warrant for Sims' residence on March 24, 2006.  Defendant Davis was not mentioned in the search warrant.

In the afternoon of March 25, 2006, the CI made another controlled buy from Sims at his residence just prior to the execution of the warrant.  During the surveillance set up for this purchase, Jelks saw Davis in front of Sims' residence and saw her enter the home.  Soon

thereafter, a Gary SWAT team entered Sims' home, and Gary police officers executed the search warrant. The police recovered suspected heroin, over $6,000, a loaded Smith & Wesson handgun, additional matching ammunition, a dinner plate containing a razor blade, and a ziplock baggie containing more suspected heroin.

Defendants Davis and Sims, along with three or four other individuals, were present at Sims' home during the search. The SWAT team members, once they had entered the residence, did a cursory search (pat down) of these individuals in search of weapons, and then handcuffed them. This group was all located in the living room of the residence at the time. The police officers then took the individuals outside of the residence and placed them against the wall.

A short time later, Davis told Officer Jelks that she needed to use the bathroom. After some minutes, Jelks walked her back into the residence. He conferred with Officer Smith, and they both accompanied Davis to the washroom. Smith checked the room for any weapons and even removed the handle from the toilet so that Davis could not flush any contraband down the toilet. Jelks meanwhile searched Davis. He found a coin bag and a pill box containing several packages of suspected heroin in Davis' front jacket pockets. After using the restroom, Davis was taken back outside and then later transported to the station. The other individuals were permitted to leave at that time. A female officer at the station conducted a more thorough search of Davis, which revealed $360 in her pants pocket.

At the station, Jelks and Smith questioned Davis. Jelks testified that he verbally went over the Miranda waiver form with Davis, and she placed her initials besides each Miranda right as he read the form to her. According to Jelks, Davis never mentioned that she couldn't read or that she needed her glasses. After reviewing the form, Davis provided information regarding

2

Sims and her participation in his drug business. Jelks then memorialized the discussion into a written statement. He reviewed the statement with Davis. Jelks testified that he generally makes an intentional error in the written statement, which then is corrected by the suspect while they review the statement together. This shows that the suspect reviewed the statement. Jelks made such a mistake with Davis' statement; he wrote that Davis knew that Sims had been selling heroin from his house for the past *ten* years. Davis corrected Jelks and stated that in fact it was for the past *two* years. Jelks denied mistreating or coercing Davis.

## II.  DISCUSSION

**A.     Evidence Seized from Davis**

Davis seeks to suppress the evidence seized from her jacket on March 25, 2006. She argues that the evidence obtained by the government should be suppressed because the officers did not have probable cause to search her. In response, the government argues that the officers had probable cause to arrest her either for visiting a common nuisance or for aiding and abetting the trafficking of drugs. (Gov't Resp. at 4.) The arrest consequently gave officers the right to search Davis. (*Id.*)

The Fourth Amendment creates a presumption against warrantless searches. *See United States v. Robinson*, 414 U.S. 218, 224 (1973). However, a search done incident to a lawful arrest is an exception to the general rule. *See Knowles v. Iowa*, 525 U.S. 113, 116 (1998) (citing *United States v. Robinson*, 414 U.S. 218, 234 (1973)); *United States v. Allman*, 336 F.3d 555, 556 (7th Cir. 2003) (listing exceptions to general rule that a search is unlawful without a search warrant). The arrest must be a valid one for the exception to apply. *See United States v. Sawyer*, 224 F.3d 675, 678 (7th Cir. 2000) (A warrantless search of arrestee "is permissible [] only if the

3

arrest was legal.").

To have probable cause for an arrest, "law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *United States v. Parra*, 402 F.3d 752, 763-64 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 1181 (2006) (internal quotations and citation omitted).  "[T]he totality of the circumstances, viewed in a common sense manner, [must] reveal[] a probability or substantial chance of criminal activity on the suspect's part[.]" *Id.* at 764 (internal quotations and citations omitted).  Once a police officer has probable cause to arrest, the officer may search the individual's body and clothing for contraband to preserve any evidence for trial, and such a search can be conducted without a warrant. *See Knowles*, 525 U.S. at 118; *United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004)*, cert. denied*, 543 U.S. 1013 (2004).

In this case, the police officers had probable cause to arrest Davis for the Indiana misdemeanor of visiting a common nuisance.  That crime is defined as follows under Indiana law:

> A person who knowingly or intentionally visits a building structure, vehicle, or other place that is used by any person to unlawfully use a controlled substance commits visiting a common nuisance, a Class B misdemeanor.

Ind. Code 35-48-4-13(a).  Under Indiana law, a law enforcement officer may arrest individuals committing misdemeanors if the officer has "probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence . . . ." Ind. Code § 35-33-1-1(a)(4).  *See also Timmons v. Indiana*, 734 N.E.2d 1084, 1086, 1087 (Ind. Ct. App. 2000), *trans. denied*, 741 N.E.2d 1259 (Ind. 2000) (noting that police officer may only arrest suspect of class

4

A and B misdemeanors (failure to stop after accident) if the misdemeanors were committed in the officer's presence); *Johnson v. Indiana*, 829 N.E.2d 44, 48-49 (Ind. Ct. App. 2005), *trans. denied*, 841 N.E.2d 182 (Ind. 2005) (finding that officer acted reasonably in arresting defendant where officer observed defendant commit class C misdemeanor (illegal possession of alcohol by minor) in his presence).

In this case, police officers found Davis at the residence of co-defendant Sims. Based on the video viewed during the hearing, it is apparent that Sims, just a brief time before the police entered his home, was handling drugs and providing them to customers. Furthermore, Jelks testified that he saw Davis enter Sims' residence during the surveillance and shortly before the execution of the search warrant. When the officer entered the residence, Davis was present in the living room where drugs and drug paraphernalia were scattered throughout. Moreover, the officers had seen Davis enter the residence during their surveillance, which also showed Sims cutting heroin and providing it to his customers. All these facts provided probable cause that Davis was committing the crime of visiting a common nuisance.

While it is true, as Davis argues, that the police did not actually observe anyone using drugs at the location, that is not the operative inquiry. The question is whether there was ***probable cause*** that the location was a common nuisance and that Davis was visiting it. As set out above, there was plenty of evidence of both. The Court therefore finds that the officers had the authority to arrest Davis and were thus permitted to conduct a search incident to that arrest. *See United States v. Kincaid*, 212 F.3d 1025, 1028 (7th Cir. 2000) ('[T]here will be no Fourth Amendment violation in a search incident to arrest where the arresting officer is authorized by state or municipal law to effect a custodial arrest and the officer has probable cause to make such

arrest."). Accordingly, Davis' Motion to suppress the evidence obtained during the search is denied.

### B.     Davis' Statements to Police Officers

In her Motion to Suppress, Davis argues that the officers inadequately advised her of her Miranda rights and improperly coerced and threatened her into making a statement. (Def. Mot. at 1-2.)  At the hearing, Davis did not present any evidence to support her claim.  The government, on the other hand, presented the Miranda waiver form at the hearing.  (Gov't Ex. 4.) The government also presented testimony from Jelks and Smith that Davis understood the waiver form, properly initialed each Miranda right as it was read to her, and was not threatened.  The Court therefore finds that Davis was properly advised of her rights both orally and in writing and that her statements were not the result of improper threats or coercion.  Accordingly, Defendant's Motion to suppress her statements is denied.

### III.    CONCLUSION

Davis was properly searched pursuant to the "search incident to arrest" exception. Moreover, she has not provided any evidence to support the claim that her statements were unknowing or coerced.  Accordingly, Defendant Davis' Motion to Suppress [DE  26] is **DENIED**.

   **SO ORDERED.**

   ENTERED:  November 20, 2006

                                    s/ Philip P. Simon
                                    PHILIP P. SIMON, JUDGE
                                    UNITED STATES DISTRICT COURT